Elisabeth M. W. Trefonas, Esquire
CA SBN 242533/WY SBN 4-6148
TREFONAS LAW, P.C.
PO BOX 2527, Jackson WY 83001
Telephone: 307-203-9019
EMWT@TREFONASLAW.COM

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 19  AM 9 52

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

**WY GP RETAIL, LLC**,
a Wyoming Limited Liability Company,
doing business as BELEZA,

CASE NO.: 19-CV-129-F

      Plaintiff,

vs.

**TOWN OF JACKSON, WYOMING**,
a Wyoming municipal corporation,

      Defendant.
_____/

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, WY GP RETAIL, LLC, d/b/a BELEZA, files this Complaint against the TOWN OF JACKSON, pursuant to 42 U.S.C. §1983, seeking a judgment declaring certain ordinances, policies and practices of the Defendant to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Plaintiff seeks a temporary and permanent injunction against the enforcement of the subject Ordinances and practices, together with supplemental relief as permitted by law. Plaintiff further prays for an award of damages for the losses occasioned by the unconstitutional application of the Town's laws against the Plaintiff.

## JURISDICTION

1.      This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1366.

5.      The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6.      This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

7.      This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain

Ordinances and policies of the Defendant. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's actions taken under color and authority of "state" law and procedures, in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## PARTIES

8.      Plaintiff, WY GP RETAIL, LLC, is a Wyoming limited liability company doing business as "Beleza" at 50 West Broadway, Jackson, Wyoming. Plaintiff is the entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

9.      Defendant, TOWN OF JACKSON, ("Defendant or "Town") is a Wyoming municipal corporation, organized and operating under the laws of the State of Wyoming.

## COLOR OF STATE LAW

10.     As a political subdivision of the State of Wyoming, organized and operating under the laws of the State of Wyoming, the TOWN OF JACKSON and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject ordinances, as amended. The enforcement and threatened enforcement of the subject ordinances against Plaintiff is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

11.     The Ordinances, actions and policies of Defendant Town of Jackson have deprived and will continue to deprive Plaintiff and its patrons of rights guaranteed and protected by the First and Fourteenth Amendments to the United States Constitution.

## PLAINTIFF'S BUSINESS AND SPEECH ACTIVITIES

12.     Plaintiff operates a business at 50 West Broadway within the municipal boundaries of the TOWN OF JACKSON, Wyoming.

13.     Plaintiff is properly zoned for retail sales at its present location and holds all requisite licenses to do business as it is currently conducted at its store. Plaintiff's business license as a "retail store" is current and not due for renewal until December 31, 2019.

14.     Plaintiff operates a retail store offering an extremely high-end line of beauty products not commonly available in chain stores. Plaintiff's principal line of merchandise consists of infrared and LED Medical II grade devices, cleared by the FDA for cosmetic uses such as promoting hair growth, reducing the appearance of aging and for topical pain management. Ancillary to the marketing of those devices, Plaintiff also sells a range of cosmetics which rejuvenate aging skin and improve appearance generally. For purposes of this Complaint the devices and cosmetics can be referred to as "the merchandise".

15.     Plaintiff's merchandise is marketed to a largely affluent clientele who patronize its store in person as a result of encountering the business during pedestrian travel along Broadway.

16.     As part of the promotion and sale of the merchandise, Plaintiff distributes free samples of its cosmetics products to pedestrians passing by its storefront and to patrons trying out the devices within the store. Plaintiff does not charge for the samples handed out to passersby. Instead, the samples are an inducement to enter the store where business is conducted or simply a form of information regarding the kind of products sold by the Plaintiff.

17.     As part of the promotion and sale of the merchandise Plaintiff also hands out literature in the form of business cards.

18.     While Plaintiff from time to time hands out product samples promoting its products to passersby, the majority of its communications with patrons and potential patrons are simply unamplified person-to-person oral communications, *i.e.* "pure speech".

19.     Plaintiff's communications do not merely propose a commercial transaction. Instead, Plaintiff also seeks to communicate information concerning personal grooming, beauty tips and skin care which are of value to passersby whether or not they buy a product from the Plaintiff.

20.     Plaintiff relies on personal, face-to-face communications with their patrons and potential patrons to market the merchandise to a much greater extent than a more conventional retail establishment marketing more conventional lines of cosmetics and beauty devices.

21.     Other forms of communication – including signs and print ads, radio and television - are noticeably less effective in reaching Plaintiff's target customers. Plaintiff's customers are more likely to make purchases after an educational session with Plaintiff's sales staff and are not likely to be attracted to the store by traditional advertising. In addition, Plaintiff's products are relatively new in the market and face-to-face advertising represents the best opportunity to spread information regarding its products generally. Plaintiff's principals and management have previously been involved with other stores with similar products and have learned that the only form of advertisement that is effective for this nature of business is face-to-face communication and the giving of samples and business cards to passersby.

22.     While some of Plaintiff's patrons may specifically go to Broadway to patronize Plaintiff's store, most of its patrons are enticed into the store because sales staff communicate with pedestrians as they walk by. That is to say, the majority of Plaintiff's patrons are pedestrians

and most of those pedestrians would not become customers, or would not be returning customers, but for Plaintiff's ability to communicate to them as they pass by.

23.     Plaintiff's personnel stand in the doorway on Plaintiff's private property and hand out samples and business cards to pedestrians walking by. These personnel ("greeters") remain within the physical premises of Plaintiff's store while only extending an arm beyond the doorway. These personnel do not harass or impede the movements of passersby, but rather act in a professional manner, are courteous and inoffensive in behavior.

24.     Plaintiff's employees and contractors do not make use of signage, card tables, kiosks or any other physical object which might block or impede pedestrian traffic.

25.     Plaintiff and its employees and contractors do not "conduct business" outside the physical location of the store; they do not actually sell any products on the curtilage or adjoining sidewalks and spaces, do not deliver goods to customers in those locations, and do not exchange money outside of the store. Instead, all of Plaintiff's activities outside of the store consist of solicitations, conversing with passerby, handing out samples and providing information to potential customers.

26.     The actual commercial transactions or "business" takes place exclusively within the confines of Plaintiff's store.

27.     Plaintiff's solicitation of pedestrians passing by outside its store involves truthful speech which is not misleading.

28.     Plaintiff's speech is protected by the First Amendment as applied to the States through the Fourteenth Amendment.

## SOLICITATION ORDINANCES

29.     Jackson regulates all manner of businesses through Title 5 of its Municipal Code entitled "Business Licenses and Regulations"

30.     Among those requirements is that businesses obtain a license from the Town pursuant to Title 5, Section 5.12.010, which reads as follows:

**5.12.010 License required.**

> It is unlawful for any person, either for himself or for any other person, or for anybody, corporation or otherwise, to commence or carry on any kind of lawful business, trade, calling, profession, solicitation or occupation in the Town, without having a valid license from the Town to do so, or without complying with any and all regulations of such business, trade, calling, profession, or occupation contained in Chapters 5.04 through 5.24, and 5.52 or other applicable governmental regulations. Violation of this requirement shall be punishable pursuant to Section 1.12.010 of the Municipal Code of the Town of Jackson.

31.     Section 5.12.010 incorporates the penalties set forth in §1.12.010 of the Municipal Code. Section 1.12.010 states that an individual who violates the Code "shall be guilty of a misdemeanor" and assessed a fine of up to $750.00.[1] *See*, §5.12.010. Probation is also a possible outcome. *See*, Title 1, Chapter 1.12, §1.12.010 "Penalty for violations".[2] That section further provides that "[e]ach person is guilty of a separate offense for each and every day during any portion of which any violation of any provision of the ordinances of the Town is committed, continued or permitted by any such person, or for each separate offense committed...".

---

[1] Under Wyoming law, "[c]rimes which may be punished by death or by imprisonment for more than one (1) year are felonies. All other crimes are misdemeanors." *See*, §6-10-101, Wyo. Stat. Ann. Section 6-10-103 of the Wyoming statutes specifies that the maximum penalty for a misdemeanor is six months in jail and/or "a fine of not more than seven hundred fifty dollars ($750.00)". The $750.00 fine imposed by Jackson for violation of Title 5 is the maximum which may be imposed for a misdemeanor.

[2] Title 1, Chapter 1.12, Section 1.12.010 is accessible on-line at https://www.jacksonwy.gov/ DocumentCenter/View/1648/Title1---General-Provisions-Mar2019 (last accessed 6/7/19).

32.     The Town purports to govern the solicitation of patrons through two specific Ordinances, codified in Title 5 (Business Licenses and Regulations) of the Jackson Code of Ordinances: (1) Section 5.12.150 "Public Property on Which Sales of Merchandise May Be Made" and (2) Section 5.52.030 "Handbill distributors".

33.     Section 5.12.150 reads as follows:.

**5.12.150  Public Property on Which Sales of Merchandise May Be Made**

No public property, including any park, street, sidewalk or right of way therefore shall be utilized at any time for the sale of any goods, wares or merchandise of any kind with the exception of newspapers, magazines, religious information or materials, or other such activities as are protected under the First Amendment of the Constitution of the United States; provided, however, that the provisions of this subsection shall not apply where otherwise approved pursuant to provisions contained in Chapter 5.04 through 5.24, and 5.52, or where nonprofit or benevolent organizations have approval in advance by the Town Council to sell items at an event occurring near or in a Town park, nor during the specified period of closure, to those portions of public streets and the adjacent sidewalks and rights of way which may be officially closed to vehicular traffic from time to time by order of the Town Council.

34.     Section 5.12.150 appears to target only the actual sale of goods and services on public property. However, that Ordinance has been previously enforced against at least one other entity (Plaintiff's predecessor) engaged in mere public solicitations without any accompanying sales activity. That is, Plaintiff predecessor did not actually sell products outside its business, but merely solicited nearby pedestrians to come into its store. Town officials have threatened to enforce the same Ordinance against Plaintiff despite the fact that its greeters remain on private property and do not engage in sales outside its business.

35.     Section 5.52.030 reads as follows:

**5.52.030  Handbill distributors.**

A.      It is unlawful to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever on any public street or sidewalk or other public place in the Town.

B.      It is unlawful to distribute indiscriminately to the public by leaving at stores, offices or houses of residence in the Town, any cards, circulars, handbills, samples or merchandise, or any advertising matter whatsoever without having first secured a permit therefore.

C.      Applications for such permit shall be made to the Town Clerk and shall contain a statement of the nature or the articles, cards or advertisement to be distributed and the name of the applicant and the name of the manufacturer or distributor of such articles or services advertised.

## ENFORCEMENT ACTION

### Enforcement Against Plaintiff's Predecessors in Interest

36.     On information and belief, Plaintiff alleges that the premises located at 50 West Broadway, Jackson, Wyoming was operated as a retail cosmetics store by at least one other business owner prior to Plaintiff's taking possession of the premises.

37.     The immediate predecessor at Plaintiff's location was a retail cosmetics store known as "Senselife" which was owned or operated by one Gilad Shamir.

38.     On information and belief, Plaintiff alleges that the solicitation activities for which Senselife or Mr. Shamir were cited was similar to the conduct and expression in which Plaintiff engages at its retail business. The primary difference is that Senselife's greeters solicited on the nearby sidewalks whereas Plaintiff's greeters remain at the doorway and curtilage of Plaintiff's store.

39.     On information and belief, Plaintiff alleges that Senselife was dependent upon the solicitation of passerby for its business just as Plaintiff is dependent upon face-to-face solicitations for its business.

40.     On information and belief, Plaintiff alleges that the Town issued two citations to Mr. Shamir, individually. Both of these citations were for conduct and expression by

employees/independent contractors of that business in connection with outdoor solicitation of pedestrians.

41.     The first citation issued to Mr. Shamir was for violation of §5.52.030(A), Unlawful distributing samples of merchandise (lotion) on a public sidewalk

42.     The second citation issued to Mr. Shamir was for a violation of §5.12.150 selling merchandise on public property. Mr. Shamir paid this ticket, in an agreement where the Town dismissed the charge of Unlawful distributing sample of merchandise.

43.     Senselife closed its business and vacated the premises. On information and belief, Plaintiff alleges that the business closed because Mr. Shamir feared future citations and possible arrests if he persisted in the solicitation

**Enforcement Against Plaintiff**

44.     Plaintiff's store was only open for a matter of days before it drew the attention of the Town's police and code enforcement officers.

45.     Uniformed officers came into Plaintiff's store several times a day and, on at least one occasion, demanded to see personal identification from Plaintiff's staff.

46.     At all times material to this action Brian Morris was employed by the Town of Jackson as a Police Detective and Code Enforcement Officer.

47.     On May 21, 2019, Detective Morris notified Plaintiff that the solicitation activities conducted by Plaintiff's greeters violated §5.52.030 of the Jackson Municipal Code and that other provisions of the Code might have been violated as well. Specifically Detective Morris stated that one of the greeters, Karina Cohen, violated the Code by handing out free samples to passersby.

48.     Shortly after being notified of the alleged violation, Gal Batzri, a representative of Plaintiff contacted Detective Morris to learn more about the alleged violation, to ascertain who was responsible and to attempt to resolve the issue.

49.     Detective Morris advised that the only way for the Plaintiff to come into compliance was to discontinue solicitation of pedestrians altogether, including but not limited to the handing out of free samples. Detective Morris declined to adopt a narrowing construction of the Ordinances which might allow the Plaintiffs to continue with solicitations from Plaintiff's entranceway. Instead, the Town insisted on a strict construction and application of the subject Ordinances against Plaintiff's speech.

50.     Detective Morris informed Mr. Batzri that one of the store's greeters, Karina Cohen, was required to personally appear at the Town police department so that the Detective could physically hand her a warning for violation of §5.52.030.

51.     In addition to the violation alleged specifically under §5.52.030 – which prohibits the distribution of handbills and, apparently samples - Detective Morris advised Mr. Batzri that public solicitation of all kinds was forbidden if it extended to persons on a public sidewalk.

52.     Mr. Batzri understood that explanation to be a reference to §5.12.150 as that is the code provision which governs commercial activities on public property and it was known to Mr. Batzri that the predecessor business (Senselife) had been cited under that provision.

53.     Upon learning from Mr. Batzri that Detective Morris wished to see her in person, Karina Cohen became distraught. She immediately resigned from her position and left the Town of Jackson, expressing her intention never to return.

54.     Several of Plaintiff's other greeters, upon learning of Ms. Cohen's resignation, became alarmed that they too might be cited for violation of §5.52.030 and might be subject to

prosecution for a criminal misdemeanor and the imposition of fines for their solicitation activities. Those greeters informed Plaintiff that they no longer wished to engage in solicitation of pedestrians given the possibility of being cited.

55.     On May 23, 2019, Mr. Batzri, contacted Detective Morris on  behalf of the Plaintiff and informed him that Karina Cohen no longer was in the jurisdiction, was no longer working for Plaintiff, and would not appear at the police department to receive a warning.

56.     Detective Morris replied that, since Ms. Cohen was no longer available to pick up the warning notice, that the Town would be compelled to issue an actual citation for violation of the solicitation ordinances. The Officer asked Mr. Batzri whether the citation should be forwarded to him in California (where Mr. Batzri was based) or whether it should be given instead to the assistant manager of Plaintiff's store. Mr. Batzri informed Detective Morris that he was willing to accept the citation and provided Detective Morris with an address in California for that purpose.

57.     During that same telephone call on May 23, 2019, Mr. Batzri informed Detective Morris that Plaintiff's store was temporarily closing down until Plaintiff figured out whether it could adjust its solicitation format to comply with the Town's Code. Plaintiff was forced into the decision to temporarily close its doors as the threat of citations and possible arrest made the retention of greeters nearly impossible; without greeters, Plaintiff's business would virtually come to a standstill.

58.     Plaintiff temporarily closed its store the following day, on May 24, 2019.

59.     On May 29, 2019, Mr. Batzri received an e-mail from Detective Morris. The Detective informed Mr. Batzri stating that he had ultimately determined to issue a warning rather than a citation for violation of §5.52.030, but that the violation had been noted and that citations

might issue in the future if Plaintiff continued its solicitation of pedestrians. The Detective further warned that Mr. Batzri might be held personally liable for the actions of Plaintiff's greeters. The text of the e-mail read as follows:

> Mr. Batzri,
>
> I am reaching out to notify you that there will be no further official action needed from you in regarding the complaint/event that occurred on 05/21/19. I have decided to resolve this complaint with a verbal warning given to you specific to the violation of municipal code MC.5.52.030.A (Handbill Distributors) committed by your employee, Karina Cohen. I have also issued a written warning to Ms. Cohen in which she has not taken receipt. To be clear, you will not receive a citation, and therefore will not be required to appear for court or pay a fine. However, the events surrounding this complaint have been documented as a report with my agency for further referencing should issues arise in the future. Please understand that in moving forward you can be held legally responsible as a business owner for the actions of your employees while they are conducting business at your establishment. Please send receipt via email that you have received this information. If you have any further questions or concerns, feel free to contact my office. Thank you for your diligence in taking care this matter.
>
> Respectfully,
>
> **Brian Morris #728**
> **Code Enforcement /Police Detective**

60.     Plaintiff is fearful that the Town will issue citations and impose fines against it, its principals and its greeters if Plaintiff continues to engage in protected speech – specifically solicitation of pedestrians passing by its store. That fear of imminent enforcement is well justified considering that that the Town has already issued a formal warning and its officials have indicated an unmistakable intention to enforce the two Ordinances against Plaintiff in the future. Plaintiff is also cognizant that the Town issues citations to the former occupant of its store for the same sort of speech activities.

61.     Plaintiff has been forced to temporarily close its business and to temporarily discontinue its speech activities as the alternative would be the imposition of punitive citations

and fines. The mere threat of enforcement has already caused Plaintiff to lose its greeters as they do not wish to risk citations, fines and misdemeanors for carrying out the ordinary speech tasks which are a necessary part of their jobs.

62.     Plaintiff was and is afraid of reopening its store because of the threatened enforcement of the subject Ordinances.

63.     Plaintiff's speech has been chilled as a result of the Town's past actions and its promise of vigorous enforcement of the two Ordinances in the future.

## CONSTITUTIONAL VIOLATIONS

64.     Sections 5.12.150 and 5.52.030 are unconstitutional on their face and as applied to the Plaintiff. The particular constitutional defects are discussed in detail in the specific Counts below, but are summarized in this section of the Complaint.

65.     Sections 5.12.150 and 5.52.030 effectively prohibit *all* solicitation of pedestrians for any commercial purpose, including communications which are truthful, non-deceptive, and non-coercive.

66.     The prohibition against solicitation in those Ordinances applies specifically to public streets – the quintessential public forum where the government's ability to regulate speech is at its nadir.

67.     Sections 5.12.150 and 5.52.030 are not limited to "aggressive solicitation" as that term is understood by the Courts.[3]

---

[3] A convenient definition of "aggressive solicitation" may be found in the case of Gresham v. Peterson, 225 F.3d 899, 902 (6th Cir. 2000) which sustained an ordinance which prohibited "[f]ollowing behind, ahead or alongside a person who walks away from the panhandler after being solicited" or using "profane or abusive language" so as to cause a pedestrian to be "fearful or feel compelled".

68.     In actual practice, the Town's enforcement of §5.12.150 and §5.52.030 have not been limited to "aggressive solicitation", but has been extended to include *any* solicitation of a person. This fact is documented in the written warning issued to the Plaintiff and the citations issued to Plaintiff's predecessor at the same location.

69.     The Town objects to the content of Plaintiff's speech. The Town has utilized its Ordinances to stifle Plaintiff's ability to advertise its lawful products.

70.     The Town objects to the manner in which Plaintiff has elected to convey their messages. In particular, the Town expressly disfavors personal, face-to-face communications and leafleting in traditional public forums.

71.     There is nothing which serves to distinguish Plaintiff's solicitations and speech activities from solicitations by politicians, religious groups and charities, and panhandlers, all of which make use of direct face-to-face communication, distribution of leaflets and gratuitous samples (such as free Bibles or religious icons). The only difference between Plaintiff's communications and those of political and eleemosynary solicitations is the content of their communications.

72.     There is nothing which serves to distinguish Plaintiff's solicitations and speech activities from commercial vendors who distribute newspapers and magazines,

73.     The Town has elected to ban all of Plaintiff's commercial solicitations, while permitting panhandlers and political and eleemosynary solicitations, because it disfavors commercial messages and, in particular, the messages and means of communication selected by this Plaintiff.

74.     When the Town banned Plaintiff's commercial solicitations (while permitting panhandlers and political and eleemosynary solicitations), it did so with the specific intent and purpose of censoring Plaintiff's speech while favoring the non-commercial messages of other speakers who have otherwise adopted exactly the same methods of communication as those of the Plaintiff.

75.     Because the fundamental constitutional right to speak freely is infringed by the Town's Ordinances and practices, this Court must apply heightened scrutiny to the Town's classification scheme which prohibits commercial solicitations, but allows exactly the same methods of communication by those with a non-commercial message. The same is true for the exception afforded those who distribute "newspapers, magazines [and] religious information".

76.     Section 15.04.350 and §15.04.360 are not narrowly tailored and do not utilize the least restrictive means of regulation. To the extent the Ordinances govern only commercial speech, the Ordinances do not provide a "reasonable fit" between the regulation and the government interest served.

77.     The Town has failed to consider less restrictive alternatives to the complete ban on face-to-face solicitation of pedestrians. A narrowly-tailored law would limit the ban on commercial solicitation to particular times and places where congestion or other adverse consequences of speech are especially likely and to particular conduct such as "aggressive panhandling" or solicitations which block traffic. Likewise, a narrowly-tailored law would not reach speech which originates on private property.

78.     The ban on commercial speech in §5.12.150 and §5.52.030 fails to provide for adequate alternative avenues of communication.

79.     Rather than ban commercial solicitation outright for all commercial speakers, the Town bans such solicitation for everyone except those individuals approved by the Town under its discretionary licensing system. In this context, the business licenses are nothing more than permits to speak – permits which can be withheld in the Town's unfettered discretion.

80.     Plaintiff is of the opinion that it does not need a permit pursuant to §5.52.030 to distribute product samples and literature such as business cards because the only permit mentioned in that section applies to solicitations where the vendor "leave[s]" those materials "at stores, offices or houses of residence in the Town".

81.     To the extent that a permit is required in order for Plaintiff to engage in its particular communications, the permitting requirement imposes an unconstitutional prior restraint. In particular, §§5.52.030-B and –C do not provide any of the substantive protections and procedural guarantees required by FW/PBS, Inc. v. Town of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990).

82.     The lack of specific criteria governing the permitting decision under §5.52.030–C allows the Town to make content-based and viewpoint-based decisions. Indeed, the Ordinance appears on its face to allow for content-based determinations as the applicant is required to provide "a statement of the nature or the articles, cards or advertisement to be distributed".

83.     Section 5.12.150 violates the Equal Protection Clause because the ordinance prohibits commercial speech in general in public places, but allows exactly the same methods of communication for "newspapers, magazines, religious information or materials" or "where nonprofit or benevolent organizations have approval in advance by the Town Council to sell items at an event occurring near or in a city park".

84.     Section 5.52.030 is unconstitutionally overbroad because it applies to the distribution of *any* handbill whether it bears a commercial or a non-commercial message. Whatever interests the Town may have in regulating commercial speech would not justify regulations infringing upon the distribution of non-commercial handbills and literature.

85.     Section 5.52.030 is unconstitutionally vague on its face and as applied because a person of average intelligence cannot tell what is prohibited and because in encourages arbitrary enforcement action is a speech context.

86.     Plaintiff's speech rights have been chilled now, and in the future, as its risks misdemeanor prosecution, fines and the loss of its business if it ever again engages in the kind of speech to which the Town objects; to-wit: personal, face-to-fact solicitation and communications with pedestrians.

## DAMAGES AND ATTORNEY'S FEES

87.     Because of the Town's Ordinances, policies and practices, Plaintiff has been forced to temporarily close its business.

88.     Because of the Town's Ordinances, policies and practices, Plaintiff is not able to engage in communications which are protected by the First Amendment. Plaintiff is completely prohibited from communicating with pedestrians upon the threat of fines, incarceration and the loss of their businesses.

89.     Because of the Town's Ordinances, policies and practices, Plaintiff has suffered economic injuries in the form of lost business associated with the enforcement of the subject Ordinances and its inability to retain employees who fear to speak given the threats of

enforcement. Plaintiff is suffering economic losses every day and will continue to do so unless the Ordinances are enjoined.

90. Unless the Town's Ordinances, policies and actions are enjoined by this Court, Plaintiff will suffer the loss of its constitutional rights.

91. Plaintiff has suffered irreparable injury and continues to suffer irreparable injury as a result of §5.12.150 and §5.52.030 and the enforcement of those Ordinances, and Plaintiff has no plain, adequate nor complete remedy to protect its constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

92. Plaintiff has no adequate remedy at law. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief. In cases involving the loss of First Amendment rights, such as in this case, damages are both inadequate and unascertainable.

93. The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by actions, such as those of Defendant, which interfere with the public's rights guaranteed under the First Amendment.

94. A permanent injunction will preserve Plaintiff's civil rights and avoid the need to award extensive compensatory damages.

95. Plaintiff has retained Benjamin, Aaronson, Edinger & Patanzo, P.A. and Trefonas Law, PC as their attorneys to represent them in this action and have agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## COUNT I

## THE ORDINANCES ARE UNCONSTITUTIONAL ON THEIR FACE VIEWPOINT AND CONTENT-BASED DETERMINATIONS

96.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

97.     This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

98.     The two solicitation Ordinances, §5.12.150 and §5.52.030, violate the First Amendment on their face, and as applied to this Plaintiff, for the reasons set forth above and as more specifically set forth in this Count.

99.     On their face, §5.12.150 and §5.52.030 appear to impose a total ban on face-to-face solicitation on the Town's streets and public areas and on the distribution of samples and literature in the same public places.

100.    However a closer examination shows that the two Ordinances are riddled with exceptions that invite, and sometimes demand, content-based decision-making by the Town's officials. Plaintiff alleges the following particulars:

A.      Section §5.12.150 creates at least three categories of favored speakers who are allowed to engage in solicitations which are completely prohibited for disfavored speakers such as Plaintiff. Those favored categories and speakers include:

(1)     Vendors and solicitors seeking to distribute "newspapers, magazines [or] religious information";

(2)     Persons who have been "approved" under other provisions of Title 5 (specifically, "Chapter 5.04 through 5.24, and 5.5"); and

(3)     Those non-profit and benevolent organizations which "have approval in advance" to sell items at Town events.

B.     Section 5.52.030 creates at least two instances in which content-based determinations are permitted or required. Those are:

(1)     The Ordinance only applies to those who distribute handbills, samples and literature "indiscriminately", thereby affording the Town's police and code officials total unbridled discretion to determine whether leafletting is discriminate (and therefore lawful) or "indiscriminate" (and therefore a criminal act).

(2)     Section 5.52.030 appears to allow the distribution of handbills, samples and literature by those holding discretionary permits issued pursuant to §5.52.030-C. However, there are no substantive standards whatsoever to limit the total unbridled discretion of the Town Clerk. Section 5.52.030-C expressly envisions that those decisions will be based on the content of the handbills or literature (or the identity of the person distributing those items) as the Ordinance requires that the applicant provide "a statement of the nature or the articles, cards or advertisement to be distributed and the name of the applicant and the name of the manufacturer or distributor of such articles or services advertised."

101.     In the case of each of the discretionary determinations allowed by the two Ordinances, there are either no standards at all to guide the decisionmaker or the criteria offered (e.g. "indiscriminately") are inherently subjective and effectively standardless.

102.     The creation of categories favoring certain speakers (e.g. those hawking newspapers and magazines) or allowing speech after receipt of an entirely discretionary permit is invidious and not supported by any legitimate government interest. Similarly situated speakers must be treated equally regardless of identity or the content of their speech. The two solicitation

ordinances which are the subject of this action do not treat speakers equally, but specifically allow and encourage content-based and viewpoint-based discrimination.

103.    The ability to pick and choose between favored speakers and disfavored messages renders the Ordinances impermissibly content-based and viewpoint-based on their face.

104.    Sections 5.12.150 and 5.52.030 of the Jackson Municipal Code are neither supported by a compelling government interest nor do those Ordinances utilize the least restrictive means of regulation. This case is controlled by Reed v. Town of Gilbert, _ U.S. _, 135 S.Ct. 2218 (2015).

WHEREFORE, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause.

B.      That this Court enter a judgment declaring that §5.12.150 and §5.52.030 of the Jackson Municipal Code are unconstitutional on their face, and as applied to Plaintiff because they allow for content-based and viewpoint-based determinations.

C.      That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §5.12.150 and §5.52.030 of the Jackson Municipal Code against the Plaintiff, and all other similarly situated citizens.

D.      That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT II
## THE ORDINANCES FAIL INTERMEDIATE SCRUTINY
## BECAUSE THEY ARE NOT NARROWLY TAILORED

105.  Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

106.  This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

107.  Sections 5.12.150 and 5.52.030 of the Jackson Municipal Code violate the First Amendment on their face, and as applied to this Plaintiff, for the reasons set forth above and as more specifically set forth in this Count.

108.  Section 5.12.150 completely prohibits any face-to-face solicitation of pedestrians on any "park, street, sidewalk or right of way". While the language of the Ordinance appears to be directed only to actual sales activity, the City has construed and applied this section to all solicitations in public areas regardless of whether a sales transaction actually takes place. The City has issued a written warning to Plaintiff under §5.12.150, stating that its solicitation of pedestrians from its front doorway constitutes a violation of the Ordinance. The City has threated to issue a criminal citation to Plaintiff if it continues to engage in those solicitation activities.

109.  On its face, §5.52.030 completely prohibits the distribution of any "handbills" in any public place. "Handbills" include "any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever". Plaintiff's cosmetics samples and business cards apparently fall within the definition of "handbills".

This Ordinance was enforced against Plaintiff's immediate predecessor who engaged in similar handbill activity. Plaintiff has good reason to fear that §5.52.030 will be applied against it as well if it continues to hand out product samples and business cards.

110.    Sections 5.12.150 and 5.52.030 are not narrowly tailored and the regulations do not provide a "reasonable fit" because the restrictions on speech are greater than is essential to further the asserted government interest. Plaintiff alleges the following particulars:

A.    Section 5.52.030 is not limited on its face to commercial leafletting or advertising, but would apply to both commercial and non-commercial speech. When read *in pari materia*, it is clear that the ordinance applies to handbills generally and that the reference to "merchandise or any advertising matter" is simply a subset or example of the larger class of "cards, circulars [and] handbills":

> It is unlawful to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever on any public street or sidewalk or other public place in the Town.

The failure to limit the reach of the law only to disruptive forms of commercial speech means that this section is unconstitutional because it is not narrowly tailored and clearly overbroad.

B.    Section 5.12.150 is not limited to face-to-face communications, leafleting or any particular subset of commercial solicitations. Rather it expressly includes *every* form of solicitation which proposes a sale or invites a citizen to enter a store. On its face, the Ordinance would reach such passive advertising as wall signs, newspaper racks, T-shirts and mute citizens wearing sandwich boards. The Ordinance would also reach efforts to hand out free samples even if no oral communication is involved.

C.    The Town failed to consider or implement less restrictive means of regulation, such as speech zones, solicitation "bubbles", limiting the prohibition to aggressive solicitations, and/or temporal restrictions tied to peak hours. In terms of leafletting, the Town failed to consider the enforcement of traditional littering laws as an alternative to a flat ban on handbills.

D.     The asserted government interest does not justify the expansion of the dual prohibitions to purely private land. As construed by the Town, both Ordinances apply to speech originating on private property if a salesman so much as "breaks the plane" dividing private property from the public sidewalk or his voice can be heard by a passerby on the street.

111.   Sections 5.12.150 and 5.52.030 do not provide alternative avenues of communication for Plaintiff's speech. Plaintiff allege the following particulars:

A.     Plaintiff's form of advertising is intrinsically geared towards patrons who are passing by its storefront. Allowing solicitation only within the shop or exclusively through media such as billboards or television does not afford Plaintiff a reasonable opportunity to convey its message.

B.     The geographic extent of the flat ban on solicitations is unreasonably large as it puts a significant percentage of the total commercial area of the Town off limits to all commercial speech. The subject Ordinance encompasses such a large percentage of the total commercial area within its solicitation ban that Plaintiff, and other similarly situated businesses, do not have a reasonable opportunity to disseminate their commercial message.

C.     The apparent inclusion of signs and other forms of passive and/or non-verbal communications within the scope of the ban is unreasonable and does not afford Plaintiff alternative means of communicating with their patrons.

112.   The ban on soliciting pedestrians to patronize a business or purchase a product or service amounts to a ban on pure speech. The Ordinance prohibits so much as a conversation initiated by a shopkeeper on his own doorstep. Flat bans on pure speech – even speech of a commercial nature – are seldom, if ever upheld, and are not constitutional under these circumstances or as applied to this Plaintiff.

113.     Sections 5.12.150 and 5.52.030 are not supported by a substantial governmental interest; the government has no legitimate interest in suppressing truthful, non-deceptive, non-coercive commercial speech. That interest is even more attenuated when applied to those components of Plaintiff's speech which are non-commercial in nature (i.e. communications about personal grooming, beauty tips and skin care).

114.     The asserted government interest does not support the scope of the ban on commercial solicitations. Rather than limiting the prohibition to coercive or harassing speech, the ban includes every form of commercial solicitation, including passive solicitations such as T-shirts and human "spinners" (the more modern cousin of the traditional "sandwich boards"). The handbill ordinance extends even further as it appears on its face to ban both commercial and non-commercial messages without a corresponding government interest.

115.     Plaintiff regularly hand out free samples to their potential customers with or without a sales pitch. While it is hoped that passersby will become interested in the products for sale once they become familiar with Plaintiff's product lines, the samples themselves are free and passersby are under no obligation to patronize Plaintiff's stores. The Ordinances, as construed by the Town, apply even to these activities, which do not directly propose a commercial transaction.

116.     Speech of the kind engaged in by Plaintiff may not be constitutionally proscribed by the subject Ordinances even if it could be constitutionally applied to aggressive panhandlers or others who physically accost pedestrians.

117.     The relatively modest interests asserted by the government do not justify the extreme impact the Ordinances have on free speech.

WHEREFORE, Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause.

B.     That this Court enter a judgment declaring that §5.12.150 and §5.52.030 of the Jackson Municipal Code are unconstitutional on their face, and as applied to Plaintiff.

C.     That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §5.12.150 and §5.52.030 of the Jackson Municipal Code against the Plaintiff, and all other similarly situated citizens.

D.     That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.     That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

**COUNT III**

**SECTION 5.52.030 IS UNCONSTITUTIONALLY VAGUE**

118.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

119.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

120.    Section 5.52.030 of the Jackson Municipal Code is unconstitutionally vague because its core provision is not readily understandable be a speaker of average intelligence nor does it constrain the discretion of law enforcement officers called upon to enforce it.

121.    The vagueness is compounded by the fact that violation of §5.52.030 is considered to be a crime.

122.     Chapter 1.12 "General Penalty" of the Jackson Municipal Code codifies the general penalties for a violation of said Code.

123.     Section 1.12.010 "Penalty for Violations" states:

A.     No person shall violate any of the provisions of the ordinances of the Town. Except in cases where a different punishment is proscribed by any ordinance of the Town, any person who violates any of the provisions of the Ordinances of the Town shall be guilty of a misdemeanor and punished by a fine of not more than Seven Hundred and Fifty Dollars ($750.00).

124.     Section 1.12.020 "Probation" states:

Probation may be imposed for any municipal ordinance conviction or plea agreement pursuant to Wyoming law, provided that the terms of probation are directly related to an element or circumstances for that conviction or charge, or for the terms or conditions for paying fines, costs, fees or restitution. A period of probation not to exceed two (2) years may be ordered in all sentences or plea agreements consistent with this ordinance. In convictions which carry no possible jail sentence, all or a portion of the fine may be suspended when probation is ordered. In convictions for which a jail sentence is possible, then all such terms of probation as authorized by Wyoming law may be ordered.

125.     Section 5.52.030 does not contain a specific penalty provision. Accordingly, a violation of that section defaults to the standard penalty set forth in §1.12.010-A. Section 5.52.030 is therefore punishable as a misdemeanor - a crime.

126.     Section 5.52.030 does not impose a blanket ban on every form of leafletting. Rather, it is only a violation of the law and a crime if the distribution of the handbill is done "indiscriminately".

127.     To the extent that the word "indiscriminately" is intended to be a term of art, that term is not defined in the Jackson Municipal Code in either Title 5 or in the general definitions which apply to the Code as a whole. *See*, Title 1, Chapter 1.04, §1.04.010 "Definitions".[4]

---

[4] Title 1, Chapter 1.04, Section 1.04.010 is available on-line at https://www.jacksonwy.gov /DocumentCenter/View/1648/Title1---General-Provisions-Mar2019 (last accessed 6/5/19).

128.     The Ordinance offers no guideline or standard to determine when the conduct of handing out "cards, circulars, handbills, samples of merchandise or any other advertising matter, on any public street or sidewalk or other public place" transitions from a lawful act (presumably, involving "discriminate" distributions) to a crime.

129.     In addition to utterly failing to inform the citizenry of what conduct, expression or distribution is lawful or unlawful, §5.52.030-A fails to establish minimal guidelines to govern law enforcement. *See*, Smith v. Goguen, 415 U.S. 566, 574-75, 94 S. Ct. 1242 (1974). Further, this lack of definiteness as to what "indiscriminately" means, allows for standardless sweeps that allow policemen and code enforcement officers to pursue their own personal predilections. *See*, Smith at 575.

130.     Section 5.52.030 is unconstitutionally vague within the meaning of the Due Process Clause of the Fourteenth Amendment to the United States constitution, because it fails to clarify what action, conduct, or expression is contemplated by "indiscriminately". *See*, Kolender v. Lawson, 461 U.S. 352, 103 S. Ct. 1855, (1983).

131.     Section 5.52.0300-A facially unconstitutional and unconstitutional as applied to Plaintiff and Plaintiff's personnel under these facts.

132.     At no time have Plaintiff's or Plaintiff's personnel been informed by law enforcement officers or code enforcement personnel as to how they may distribute handbills in a discriminate manner so as to avoid being cited or arrested for indiscriminate distribution of circulars, handbills, samples of merchandise or advertising matter in public places.

133.     Given the lack of precision in the Ordinance, the lack of any memorandum, statutory construction or policy which might constrain the discretion of law enforcement officers, and the threats to enforce §5.52.030against Plaintiff, the Plaintiff has been forced to refrain

entirely from distributing to the public any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever on any public street or sidewalk or other public place in the Town. The alternative for Plaintiff would be risk possible arrest, prosecution and a fine for "indiscriminately" distributing handbills – whatever that may be.

134.   The unique harm posed to Plaintiff and the threat to enforce the Ordinance against Plaintiff's otherwise lawful and constitutionally protected conduct, renders §5.52.030 unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution when applied to Plaintiff's circumstances.

135.   As <u>Kolender</u> and <u>Goguen</u>, point out, ordinances such as §5.52.030 allow law enforcement officers to enforce the prohibitions against speech and otherwise lawful conduct without guidelines and without standards.

136.   Since the actions of Plaintiff and Plaintiff's personnel are protected by the First Amendment to the United States Constitution, §5.52.030 allows for total unbridled discretion in the hands of law enforcement officers and code enforcement personnel to stifle, suppress, and criminalize speech that they disfavor, while allowing speech and expression that is favored, to flourish.

137.   Section 5.52.030 not only violates the Fourteenth Amendment to the United States Constitution, but also allows for unbridled discretion in the hands of the censor, in violation of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff pray for the following relief:

A.     That this Court take jurisdiction over the parties and this cause.

B.     That this Court enter a judgment declaring that §5.52.030 of the Jackson Municipal Code is unconstitutional on their face, and as applied to Plaintiff.

C.     That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §5.52.030 of the Jackson Municipal Code against the Plaintiff, and all other similarly situated citizens.

D.     That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.     That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IV
## SECTION 5.52.030 IS UNCONSTITUTIONALLY OVERBROAD

138.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

139.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

140.    Section 5.52.030 is overbroad because the Ordinance reaches a significant amount of speech which is not subject to prohibition, including truthful commercial speech presented in non-coercive circumstances as well as non-commercial speech enjoying the highest protection under the First Amendment.

141.    Section 5.52.030 violates the First Amendment because it is overbroad; the Ordinance impacts more speech than is justified by the limited narrow government interest and chills a significant amount of protected communications.

142.     Section 5.52.030 is not limited on its face to commercial leafletting or advertising, but would apply to both commercial and non-commercial speech. When read in *pari materia*, it is clear that the ordinance applies to handbills generally and that the reference to "merchandise or any advertising matter" is simply a subset or example of the larger class of "cards, circulars [and] handbills":

> It is unlawful to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever on any public street or sidewalk or other public place in the Town.

The failure to limit the reach of the law only to disruptive forms of commercial speech means that this section is unconstitutional because it overbroad.

143.     Section §5.52.030 is overbroad and is not narrowly tailored because it applies to speech activities which occurs in whole or in part on private property. In particular, the Town has applied or threatened to apply the Ordinance against the Plaintiff for handing out samples and business cards from its doorway and curtilage because the recipient is on the public sidewalk.

144.     The prohibition against leafletting applies specifically to public streets and sidewalks – the quintessential public forum where the government's ability to regulate speech is at its nadir.

WHEREFORE, Plaintiff pray for the following relief:

A.     That this Court take jurisdiction over the parties and this cause.

B.     That this Court enter a judgment declaring that §5.52.030 of the Jackson Municipal Code is unconstitutional on its face, and as applied to Plaintiff.

C.     That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §5.52.030 of the Jackson Municipal Code against the Plaintiff, and all other similarly situated citizens.

D.      That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT V
## SECTION 5.12.150 VIOLATES EQUAL PROTECTION

145.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

146.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

147.    Section 5.12.150 violates the Equal Protection Clause of the Fourteenth Amendment on its face, and as applied to this Plaintiff, for the reasons set forth above and as more specifically set forth in this Count.

148.    The Town maintains that §5.12.150 imposes a complete ban on any solicitation or commercial speech by the Plaintiff outside of Plaintiff's building.

149.    However, similarly situated speakers and businesses are either not subject to the ban or have been granted a permit which exempts them from 5.12.150 entirely. This is apparent on the face of the Ordinance which creates three broad groups of speakers who are exempt from the ban in whole or in part:

A.     The Ordinance entirely exempts certain specified groups from the otherwise total ban on solicitations and sales:

    (1)    newspapers

    (2)    magazines

    (3)    distributors of "religious information or materials".

B.     The Ordinance conditionally exempts certain groups from the ban limited to City events and road closures with the receipt of a discretionary permit:

    (1)    nonprofits

    (2)    "benevolent organizations".

C.     Individuals or organizations who are "otherwise approved pursuant to provisions contained in Chapter 5.04 through 5.24, and 5.52". The approvals in question concern discretionary business licenses and permits provided for in Title 5 of the Jackson Municipal Code.

150.   The blanket prohibition against solicitations and sales in public areas of the Town applies to at least three broad groups which do not fall within either of the express or limited exceptions:

    (1)    Individuals and organizations engaging in commercial solicitations which are for-profit undertakings and are distributing information other than newspapers, magazines or religious tracts; and

    (2)    Individuals and organizations who are fundraising or undertaking sales but are not organized as "nonprofits or benevolent organizations";

    (3)    Individuals and organizations who are fundraising or undertaking sales associated with political activities, campaigns or issues.

151.    Section §5.12.150 violates the Equal Protection Clause because the Town's classification scheme prohibits Plaintiff from engaging in commercial solicitations and expressive conduct outside its business, but would allow precisely the same activity by any "newspaper" or "magazine" even if those items are distributed on a commercial basis for profit. There is nothing to distinguish Plaintiff's business from those categories of businesses which are exempted from the ban.

152.    Section §5.12.150 violates the Equal Protection Clause because the Town's classification scheme prohibits commercial solicitations, but allows exactly the same methods of communication by those with a non-commercial message or which are organized as non-profit organizations. True comparables would include clergymen handing out free Bibles to enhance their message of salvation or the local parent teachers' association distributing baked goods in exchange for a suggested donation.

153.    Section §5.12.150 violates the Equal Protection Clause because the Town's classification scheme prohibits commercial solicitations, but provides an exemption for those individuals and businesses who are granted discretionary business licenses under other provisions of Title 5. As noted elsewhere in this Complaint, the provisions governing the issuance or denial of business licenses are standardless and arbitrary and allow the Town to discriminate on the basis of content, to reward favored speakers and to censor disfavored speakers or messages.

154.    Plaintiff cannot qualify for the conditional permit which allows solicitations at City events and during street closures because Plaintiff is not a non-profit or benevolent organization. The blanket disqualification from the special permit exception is invidious and arbitrary and deprives Plaintiff of its right of Equal Protection.

155. There is no public purpose served by favoring one business or commercial speaker over other similarly situated businesses or speakers.

156. The classification scheme created by §5.12.150 is invidious and allows for content-based distinctions between similarly situated speakers. The same invidious classification makes the Ordinance constitutionally underinclusive.

157. The classification scheme created by §5.12.150 is arbitrary – particularly with respect to the distinctions between commercial and non-commercial speech which employ exactly the same format and techniques and will affect the government's interest in exactly the same way with the only difference being attributable to the identity of the speaker or the content of the speech.

158. Plaintiff has a right to have this Court declare its rights under the Fourteenth Amendment as those rights are restricted and infringed by the granting of special privileges and exemptions to preferred businesses and speakers.

159. The Town's ordinances, policies and procedures are subject to strict and heightened scrutiny and may not be upheld unless the Town demonstrates the existence of a compelling government interest with regulations that are the least restrictive means of effecting that compelling interest.

WHEREFORE, Plaintiff pray for the following relief:

A. That this Court take jurisdiction over the parties and this cause.

B. That this Court enter a judgment declaring that §5.12.150 of the Jackson Municipal Code is unconstitutional on its face, and as applied to Plaintiff.

C.      That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §5.12.150 of the Jackson Municipal Code against the Plaintiff, and all other similarly situated citizens.

D.      That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VI
## THE ORDINANCES IMPOSE AN UNCONSTITUTIONAL PRIOR RESTRAINT

160.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 95 of this Complaint and incorporate them herein by reference.

161.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

162.    Sections 5.12.150 and 5.52.030 violate the First Amendment on their face, and as applied to this Plaintiff, for the reasons set forth above and as more specifically set forth in this Count.

163.    Sections 5.12.150 and 5.52.030 are not laws of general application because they apply specifically to speech activities (i.e. face-to-face solicitation of pedestrians and the distribution of "handbills").[5]

164.    Sections 5.12.150 and 5.52.030 impose an unconstitutional prior restraint because a speaker cannot engage in commercial solicitation on his own property, or in traditional public forums (streets and sidewalks), without first obtaining permission from the government in the form of a permit or other "approval". The decision whether to enter into such an agreement and, therefore, the decision whether speech will be permitted, is subject to discretionary determinations, indefinite times for decision-making and barriers to judicial review. *See,* FW/PBS, Inc. v. Town of Dallas, 493 U.S. 215, 110 S. Ct. 596 (1990).

165.    Sections 5.52.030-B and C impose an express permitting requirement for all those wishing to distribute "articles, cards or advertisement":[6]

_____

[5] The fact that the City also requires a generic business license, such as the "retail store" license issued to Plaintiff, does not change the fact that the particular laws in question regulate speech and are not of general application. Similarly the fact that the City may incorporate procedures for generic business licenses into its regulations of speech activities does insulate those procedures from constitutional attack. Finally the fact that Plaintiff is a profit-driven enterprise does not mean that it is unprotected by the First Amendment. The regulation of speech is strictly constrained by the First Amendment even if there is an economic component to that speech.

[6] Plaintiff argues elsewhere in this Complaint that the permitting requirement in §5.52.030-C does not apply to it because the permit seems to be limited only to those persons who leave literature or samples on the property of others (i.e. speakers who fall under §5.52.030-B). Plaintiff seeks to distribute samples and business cards from its own property by soliciting pedestrians passing by on the public sidewalks. A reasonable construction of §5.52.030 would lead one to conclude that Plaintiff's activities either do not require a permit or that Plaintiff *cannot* obtain a permit for the kind of solicitations in which it engaged (thereby creating a total ban on the solicitation of pedestrians on public sidewalks and other public areas). The Town has threatened to cite Plaintiff under §5.52.030, but it is not clear whether the threat was based on the failure to obtain a permit under §5.52.030-C or on the distribution of samples and business cards under any circumstances.

B.    It is unlawful to distribute indiscriminately to the public by leaving at stores, offices or houses of residence in the Town, any cards, circulars, handbills, samples or merchandise, or any advertising matter whatsoever without having first secured a permit therefore.

C.    Applications for such permit shall be made to the Town Clerk and shall contain a statement of the nature or the articles, cards or advertisement to be distributed and the name of the applicant and the name of the manufacturer or distributor of such articles or services advertised.

166.    Sections 5.52.030-B and -C do not include any procedures or standards for applying for and obtaining a permit other than the statement that the Town Clerk is to process them and that the applicant has to disclose information concerning "the nature or the articles, cards or advertisement to be distributed" and identify the applicant and the source of the goods or services.

167.    Sections 5.52.030-B and -C impose an unconstitutional prior restraint because they do not provide any standards at all to guide the Town Clerk in determining whether to grant or deny an application. The decision is clearly not entirely ministerial as the Town Clerk is called upon to evaluate the sufficiency of the disclosure concerning the content of that advertisement. The Town Clerk has unfettered discretion to grant or deny any license and is free to deny a license for content-based reasons.

168.    Sections 5.52.030-B and C impose an unconstitutional prior restraint because the permitting decision is not confined to a specified brief period of time. Indeed, there are no deadlines at all so that the Town Clerk can deny speech indefinitely simply by failing to render any decision. There is no mechanism afforded which would allow an applicant to force a decision. Furthermore, the applicant is not allowed to engage in speech activities without a license if a timely decision is not forthcoming.

169.    Sections 5.52.030-B and -C impose an unconstitutional prior restraint because it does not provide for prompt judicial review and there is no mechanism available by which administrative remedies can be exhausted within a specified period of time – or at all.

170.    Sections 5.52.030-B and -C lack standards and procedures to govern license applications and do not reference or incorporate standards or procedures from any other section of the Municipal Code. However, to the extent that the Town relies on the general permitting procedures set forth in Chapter 5.12 to guide the licensing decision for §5.52.030-B and -C licenses, the Town still imposes an unconstitutional prior restraint as the Chapter 5.12 provisions are themselves inadequate for the reasons set forth below.

171.    Section 5.12.150 (sales on public property) does not include an express permitting requirement, but imposes a blanket ban on "the sale of any goods, wares or merchandise of any kind" without approval by the Town. Approval is obtained in one of three ways:

A.    By exemption for "newspapers, magazines, religious information";

B.    By obtaining approval pursuant to Chapter 5.04 through 5.24, and 5.52;

C.    Or by obtaining approval from the Town in connection with a particular special event, provided that such approvals are limited to "nonprofit or benevolent organizations".

172.    Plaintiff is not a newspaper and the literature it distributes is in the form of a business card rather than a magazine. Plaintiff's communications do not involve religion. Plaintiff is a for-profit corporation and is unlikely to be considered to be a "benevolent organization" (albeit, that term is undefined in the Code).

173.    Accordingly, if Plaintiff is to be allowed to engage in commercial solicitations, it must obtain approval in the form of one or more of the business permits listed in §5.12.150; to-wit: Chapters 5.04 through 5.24, and Chapter 5.52.

174. The permit options listed in §5.12.150 regulate a variety of specific businesses from door-to-door salesmen (Chapter 5.06) to transient merchants (Chapter 5.21). However, the standards and procedures which govern all of those business permits, and the procedures applicable to Plaintiff's business are set forth in Chapter 5.12 itself.

175. The standards and procedures for reviewing an application for a business license, including any permit to be issued pursuant to §5.12.150, are set forth in §§5.12.030, 5.12.070 and 5.12.115 of the Jackson Municipal Code.

176. The requirements for applying for a business license are set forth in §5.12.030, the salient provisions of which read as follows:

> 5.12.030 Applications or renewals. A. An application for or renewal of a business license must be submitted and approved by the Town before the business can begin operations. Applications for all licenses and permits required by Chapters 5.04 through 5.24, and 5.52 shall be made in writing to the Town Clerk in the absence of provision of the contrary. Each application shall state the name of the applicant, the permit or license desired, the location to be used, if any, the time covered, shall state that the applicant has obtained a sales tax license or permit from the state and is in compliance with the requirements of the workmen's compensation and unemployment compensation laws of the state, or shall show reasons why the applicant is exempt from the requirements of the sales tax or workmen's compensation and unemployment compensation laws, the applicant's federal employer's identification number or a copy of the application for such number, and the fee to be paid to the Town, and each application shall contain such additional information as may be needed for the proper guidance of the Town officials in the issuing of the permit or license applied for. B. If any of the requirements in section 5.12.030.A are not provided to the Town, a business license shall not be issued….

177. Section §5.12.030 fails to include any substantive criteria to guide the permitting decision. Plaintiff alleges the following particulars:

A. The disclosure requirements are not limited to those listed in the Code, but can include "such additional information as may be needed".

B.      Ultimately, the decision can be grounded on any basis as Town Officials can consider any additional information "as may be needed for the proper guidance of the Town officials in the issuing of the permit or license applied for". That criterion has been deemed unconstitutional for the last 50 years. *See,* Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 149–51, 89 S. Ct. 935, 937–39 (1969).

C.      The Ordinance does not actually require the Town officials to issue a license if all of the required disclosures are made.

178.    Section §5.12.030 does not guarantee that a permitting decision will be made within any specified brief period of time.

179.    In addition to the informational disclosures required by §5.12.030, a license applicant must undergo an indeterminate series of "investigations" by Town officials. As will be seen, that additional requirement affords additional opportunities for content-based decisionmaking, unbridled discretion and delay.

180.    License investigations are governed by §5.12.070 of the Jackson Municipal Code:

5.12.070 Investigations.

A.      Upon the receipt of complete application for a license or permit where ordinances of the Town necessitate an inspection or investigation before the issuance of such permit or license, the Town Clerk shall refer such application to the proper Town Department for making such investigation within seven (7) days of the date of such receipt. The Town Department charged with the duty of making the investigation or inspection shall make a report thereon, favorable or otherwise, within ten (10) days after receiving the application or a copy thereof. Jackson Municipal Code Title 5 – Business Licenses and Regulations Page 12 of 63

B. The building inspector shall make or cause to be made any such inspections relative to the construction of buildings or other structures.

C.      The Chief of Police or his designee shall make or cause to be made a general criminal background investigation that shall include a local law enforcement database check and a driver's license inquiry to the extent allowable

under current law. All persons filing applications for new licenses shall submit a signed affidavit and authorization form as provided by the Town Clerk, which includes the applicant's name, signature, address, and date of birth to assist with application processing by the Town Clerk and Chief of Police. All persons filing applications shall agree to a background check, including criminal information, conducted by the Chief of Police or his designee. Procedures for reviewing applications will be established by the Chief of Police and Risk Manager. The Chief of Police will provide a recommendation to the Risk Manager to approve or deny issuance of the license based upon the applicant's ability to meet and maintain the requirements set forth in this Chapter. D. All other investigations except where otherwise provided, shall be made by the appropriate Town Department designated by the Mayor or Town Manager.

181.    The constitutional problems with the investigation requirement are manifest. Plaintiff alleges the following particulars:

A.    There are no provisions which guide the Town Clerk's decision as to what investigations may be required in any particular case. Disfavored speakers may be subjected to multiple investigations at the Clerks' sole discretion.

B.    There are no standards to govern the investigation by any of the possible Town officials to whom the task may be delegated.

C.    The referral to the Chief of Police, mandated by 5.12.070-C, is particularly troublesome in terms of unbridled discretion. While the Chief is directed to conduct a "general criminal background investigation that shall include a local law enforcement database check and a driver's license inquiry", there are no standards to govern his decision. The only guidance is an instruction that "the Chief of Police will provide a recommendation... based upon the applicant's ability to meet and maintain the requirements set forth in this Chapter." The Chief could presumably deny a license for the most minor misdemeanor or for a mere traffic ticket. In the alternative, if a favored applicant is being reviewed, there is nothing that would prevent the Chief from overlooking a felony conviction on the plea that the crime was unrelated to the particular business enterprise, or on the basis of any other subjective judgment by the Chief.

D.      Of all officials in the process, it appears that the Town's Risk Manager may be granted the most discretion of all. It appears that the recommendations of the Police Chief and other investigating officials are given to the Risk Manager. However, the Ordinance does not tell the Risk Manager what he or she is to do with the recommendation. Given the lack of guidance, the Risk Manager is free to accept or reject any of the "recommendations". In particular, it does not appear that the Risk Manager is obligated to issue a license if all of the recommendations are positive. Likewise, the Risk Manager appears to have the authority to issue a license even if one or more of the investigating officials recommends the denial of the application.

E.      A permitting decision is not guaranteed within a specified brief period of time. While the Ordinance nominally requires a decision within 17 days (seven days for the Clerk's referral to the various Town department and 10 days for the completion of the investigation), there is no actual requirement that a decision be made within that time period; there are no consequences if the decision is not timely made; the applicant can be denied the ability to speak through simple inaction. Similarly, there are no specific times for conducting the department inspections or the criminal background assigned to the Chief of Police. The Ordinance does not say what happens if an investigation is not completed within the 10 days allotted for a decision and does not guarantee that the speech activity will be allowed without a permit if the investigations are not completed or the licensing decision is not made within the nominal 17 days.

F.      The time period for review is unreasonably long. While the nominal 10 day period for the actual investigation may be defensible, there is no reason why it should take seven days for the Clerk to forward the application to the responsible department; that is a task that could easily be completed within hours of receipt of the application.

182.    The provisions for an administrative appeal of a license denial are set forth in §5.12.115 of the Jackson Municipal Code:

> 5.12.115        Appeal. Any person or organization adversely affected by the permanent or temporary suspension or denial of any Business license may appeal the decision of the Chief of Police, Town Manager or his or her designee, to the Mayor and Town Council. Any appeal shall be taken by the affected party requesting an appeal in writing within ten (10) business days from the date the decision of the Chief of Police, Town Manager or his or her designee is mailed to the address of record. The appeal shall be heard by the Mayor and Town Council within thirty (30) days after receipt of the written request unless the parties agree in writing to a different time frame.

183.    Section 5.12.115 imposes administrative barriers to prompt judicial review and allows for both impermissible delay and content-based decisionmaking. Plaintiff alleges the following particulars:

A.    While §5.12.115 provides for an administrative appeal, it does not establish any substantive standards for review thereby allowing the Mayor and Town Council the unfettered discretion to sustain the appeal of favored speakers or messages and to deny the appeal of disfavored applicants. The failure to specify standards results in the following threats to speech and due process:

(1)    The Ordinance does not indicate the nature of the review: whether it is de novo, a record-based review or some other standard;

(2)    The Ordinance does not provide that the appealing applicant has the right to call witnesses or to cross-examine the City's witnesses;

(3)    The Ordinance does not specify the criteria which will guide review by the Mayor and Town Council (e.g. whether the permitting decision is reviewed for abuse of discretion or on some other criteria), but affords those officials total unbridled discretion.

B.      While §5.12.115 states that the appeal will be "heard" within 30 days, it does not actually require that a decision be made at that time or at any other particular time. Plaintiff notes the following consequences of the failure to guarantee a decision within a specified brief period of time:

(1)      There are no consequences if the Mayor and Town Council fail to hear the appeal within the nominal 30 day period; speech can again be denied through simple inaction.

(2)      There are no consequences if the Mayor and Town Council does not make a decision at the conclusion of the hearing or continues the hearing from meeting to meeting. Access to the Courts can be frustrated simply by delaying or refusing to issue a decision on the administrative appeal.

(3)      There is nothing in the Code which would allow the appealing applicant to compel the Mayor and Town Council to make a decision.

(4)      There is nothing in the Code which would allow the appealing applicant to engage in speech activities if no decision is made on the appeal within a specified brief period of time.

C.      Without a final administrative decision the action is not ripe and cannot be appealed to a reviewing Court; the doctrine of exhaustion of administrative remedies will block any judicial review.

D.      The Ordinance does not require that the Risk Manager (or other designee) provide any reasons for his denial of a license application nor are the Mayor and Town Council required to do so on administrative appeal. Accordingly, there is no record for a Court to review and no basis to determine whether an applicant was qualified or met the Town's requirements – especially where those requirements are entirely subjective and discretionary.

184.    The Ordinance does not provide for any judicial review.

185.    The Ordinance does not preserve the *status quo* pending judicial review.

186.    The Ordinance imposes insurmountable obstacles to prompt judicial disposition. *See*, Town of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 124 S. Ct. 2219 (2004).

187.    The Ordinance does not guarantee a prompt judicial disposition of any challenge to the Town's decision or failure to decide. *See*, Town of Littleton, *supra*.

WHEREFORE, Plaintiff pray for the following relief:

A.      That this Court take jurisdiction over the parties and this cause.

B.      That this Court enter a judgment declaring that Title 5 – and in particular, §5.12.150 and §5.52.030 of the Jackson Municipal Code - are unconstitutional on their face, and as applied to Plaintiff.

C.      That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing the permitting portions of Title 5, including §5.12.150 and §5.52.030, against the Plaintiff, and all other similarly situated citizens.

D.      That this Court enter a judgment for damages sufficient to compensate the Plaintiff for the loss of its business profits and for violation of Plaintiff's right to freedom of expression.

E.      That this court award Plaintiff its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VII

### (State Declaratory Judgment – The Ordinances do not Apply to Plaintiff)

188.    Plaintiff re-alleges and incorporates paragraphs 2 through 4, 8-63 and 87 through 89 of this Complaint as if fully set out herein.

189.    This is an action in equity for declaratory judgment, brought pursuant to the Wyoming Uniform Declaratory Judgments Act (§§1-37-101 through 1-37-115, Wyo. Stat. Ann.) and the supplemental jurisdiction of this Court.

190.    Plaintiff is uncertain as to it rights and remedies under the Jackson Municipal Code and under the laws of the State of Wyoming.

191.    Plaintiff seeks a declaratory judgment that its speech activities and commercial solicitations, including the handing out of samples, do not violate §5.12.150 and §5.52.030 of the Jackson Municipal Code.

192.    Section 5.12.150 does not apply to the Plaintiff either because its speech and solicitations do not fall within the definition of prohibited sales activity or because Plaintiff is exempt from regulation under the First Amendment. Plaintiff alleges the following particulars:

A.      On its face, §5.12.150 applies only to "the sale of any goods, wares or merchandise of any kind" which occurs in defined public areas (i.e. on "public property, including any park, street, sidewalk or right of way").

B.      The speech activities and commercial solicitations in which Plaintiff engages do not include "the sale of any goods, wares or merchandise of any kind" because no sales transactions are done outside of the Plaintiff's building. Plaintiff does not buy or sell goods or services outside of its building nor does it deliver goods or services to customers outside of its building.

C.      Section 5.12.150 includes an exemption for activities which "are protected under the First Amendment of the Constitution of the United States". Plaintiff engage in speech activities which are presumptively protected by the First Amendment and which should exempt Plaintiff from the ban which otherwise applies to purely economic activities on public property.

D.      The speech activities and commercial solicitations in which Plaintiff engages do not take place on public property. Rather, Plaintiff's greeters remain in the door and curtilage of Plaintiff's private property and at most extend an arm to or speak to pedestrians passing by on the sidewalk.

193.    Section §5.52.030 does not apply to the Plaintiff because its speech and solicitations do not fall within the definition of prohibited handbills. Plaintiff alleges the following particulars:

A.      On its face, §5.52.030 applies only to those who distribute cards, circulars, handbills, samples of merchandise or advertising matter "indiscriminately". Although that term is completely undefined in the Municipal Code, the commonly understood meaning of the word extends to actions conducted "in a random manner; unsystematically" or "in a way that does not show care or judgement." *See*, "Indiscriminately", OXFORD DICTIONARY (Online Ed.), accessible at https://www.lexico.com/en/definition/indiscriminately (last accessed 6/11/19).

B.      Plaintiff does not distribute its samples and business cards "indiscriminately". Rather, its greeters are confined to the entrance and curtilage of Plaintiff's business and address only those pedestrians who pass in front of the business. Furthermore, Plaintiff's greeters are trained as to the proper manner to interact with potential customers so that encounters are structured and in no way random or unsystematic.

C.      On its face, §5.52.030 applies only to distribution of handbills "on any public street or sidewalk or other public place in the Town". The speech activities and commercial solicitations in which Plaintiff engages do not take place on public streets or sidewalks. Rather, Plaintiff's greeters remain in the door and curtilage of Plaintiff's private property and at most extend an arm to or speak to pedestrians passing by on the sidewalk.

194.    Because §5.12.150 and §5.52.030 have the potential to restrict lawful business and lawful speech, they must be construed narrowly in favor of the business and speaker and against the government.

195.    The Town mistakenly employed §5.12.150 and §5.52.030 as a means of limiting Plaintiff's speech activities resulting in economic damages, including lost profits, and the infringement of Plaintiff's constitutional rights.

196.    The Town has indicated that it intends to continue enforcement of §5.12.150 and §5.52.030 against Plaintiff and Plaintiff's speech activities.

197.    This action is ripe for adjudication and a declaratory judgment would provide substantial relief to the Plaintiff.

WHEREFORE, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring that §5.12.150 and §5.52.030 of the Jackson Municipal Code does not apply to Plaintiff's speech activities and commercial solicitations, including the handing out of samples.

C.      That this Court award supplemental relief in the form of damages to compensate Plaintiff for the damages occasioned by the Town's censorship and limitation of Plaintiff's speech activities.

D.     That this court award Plaintiff its recoverable costs.

E.     That this Court award Plaintiff all other supplemental relief in law and in equity to which it may be entitled.

## DECLARATION

### (28 U.S.C. § 1746)

I, REEM LEWIT, do declare as follows:

1.      I am REEM LEWIT.

2.      I am the Manager and authorized representative of WY GP RETAIL, LLC.  I am authorized to execute this Declaration on behalf of the said Plaintiff.

3.      I have read the foregoing Complaint, and all of the facts alleged in the Complaint are true and correct. I have personal knowledge of those facts.

4.      I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: June /7, 2019

_____
REEM LEWIT

*Respectfully submitted,*

TREFONAS LAW, P.C.

ELISABETH M. W. TREFONAS, Esquire
CA SBN 242533/ WY6-4168
P.O. Box 2527, Jackson WY 83001
80 E. Pearl Ave., Jackson WY 83001
 (307) 203-9019  (Fax) (800) 572-6458

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

JAMES S. BENJAMIN, Esquire*             GARY S. EDINGER, Esquire*
Florida Bar No.: 293245                 Florida Bar No. 0606812
1700 East Las Olas Blvd., Suite 202     305 N.E. 1st Street
Ft. Lauderdale, Florida 33301           Gainesville, Florida 32601
(954) 779-1700 (Fax) (954) 779-1772     (352) 338-4440  (Fax) (352) 337-0696
sexlaw@bellsouth.net                    GSEdinger12@gmail.com

*Attorneys for Plaintiff*

* Pending admission pro hac vice